# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALLSTATE INSURANCE CO., | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 08-4549 |
| | : | |
| TIMOTHY HOPFER, et al | : | |
| Defendants | : | |

**M E M O R A N D U M**

**STENGEL, J.**                                                                                              November 18, 2009

Before the Court is a motion for Judgment on the Pleadings filed by Plaintiff Allstate Insurance Company on April 29, 2009. Allstate filed a declaratory judgment complaint on September 18, 2008 seeking a declaration of its duties to defend and indemnify David, Linda Lee, Kevin, and Timothy Hopfer in an underlying state civil action against them for the death of Abigail Alexis Tagert.

**I.     FACTUAL BACKGROUND**

On December 7, 2005, Ms. Tagert died at the Honeybrook, Pennsylvania home of David and Linda Hopfer, who are the named insureds under an Allstate Deluxe Homeowners insurance policy. Pl.'s Declaratory J. Compl. at ¶¶ 10, 13. Their son Timothy resided with Mr. and Mrs. Hopfer at the time of Ms. Tagert's death.¹ Id. at ¶¶ 11, 12.

---

¹     The Hopfer's other son, Kevin, lives in Morgantown, Pennsylvania, but is alleged to have been in the family residence on the night in question.

As a result of Ms. Tagert's death, her parents, Defendants Darlene Pfeiffer and Thomas Tagert, filed suit against the Hopfers in the Chester County Court of Common Pleas. Am. Compl. of Darlene Pfeiffer and Thomas Tagert, individually and as co-administrators of the Estate of Abigail Alexis Tagert v. Timothy Hopfer, Linda Lee Hopfer, David Hopfer, and Kevin Hopfer, Docket No. 07–08771 ("Tagert Complaint").

The following facts as alleged in the Tagert complaint are crucial to the determination whether Allstate is required to defend and indemnify the Hopfers in this underlying suit. On December 6, 2005, Timothy Hopfer took a quantity of the prescription drug Dilaudid, a Schedule II controlled substance, from the Chester County Hospital. Tagert Compl. at ¶ 10. Timothy worked at the hospital as a registered nurse, but took the Dilaudid with the intention to use it for recreational purposes. Id. at ¶¶ 8, 10. That night, he took it to the Hopfer residence, where Ms. Tagert was a guest. Id. at ¶ 12. While there, he injected Ms. Tagert with Dilaudid three separate times through a "port" he had inserted into her foot. Id. at ¶ 13. Following the third injection, Ms. Tagert began to experience "labored breathing, discoloration, vomiting, and loss of consciousness." Id. at ¶ 17. Timothy was aware the third injection had contained more of the drug than the previous two, and was also aware Ms. Tagert was experiencing potentially deadly side effects. Id. at ¶ 19. Timothy attempted to resuscitate Ms. Tagert at some point following her adverse reaction. Id. at ¶ 18. However, he failed to seek medical attention for Ms. Tagert for at least another two hours and ignored the requests of another guest, Kourtney

Rowe, that he do so. Id. at ¶¶ 22-23.

David, Linda, and Kevin Hopfer also became aware of the symptoms Ms. Tagert was experiencing but similarly failed to seek medical help for her for at least two hours after learning of them. Id. at ¶ 22. Ms. Tagert died at the Hopfer residence as a result of drug toxicity later that night. Id. at ¶ 24.

In connection with his actions, Timothy Hopfer was charged with and pleaded guilty to drug delivery resulting in death in violation of 18 Pa. C.S.A. § 2506; theft by unlawful taking in violation of 18 Pa. C.S.A. § 3921(a); and illegal manufacture, delivery, or possession of a controlled substance in violation of 35 Pa. C.S.A. § 780–113(a)(30). Pl.'s Declaratory J. Compl. at ¶ 19.

Count I of the Tagert Complaint alleges negligence on the part of Timothy Hopfer for, *inter alia*, engaging in dangerous activities within his home, repeatedly injecting Ms. Tagert with Dilaudid, failing to obtain medical attention for her in a timely manner following her adverse reaction, observing her condition and allowing her to "sleep it off", allowing and causing a prolonged delay in obtaining medical attention for her by "moving and cleaning" her body, and misinforming authorities about the identity and nature of the substance causing her condition. Tagert Complaint at ¶ 31(c)–(e), (g), (i), (p), (q).

Counts II and III of the Tagert Complaint allege negligence on the part of Linda and David Hopfer for, *inter alia*, failing to properly monitor the activities conducted in their residence by Timothy and Kevin Hopfer, allowing Timothy and Kevin to engage in

activities dangerous to others, breaching their duty to safeguard guests in their home, failing to obtain medical attention for Ms. Tagert upon learning of her adverse reaction, allowing Ms. Tagert to "sleep it off", and allowing a prolonged delay in obtaining medical care for her. Tagert Complaint at ¶ 33(a), (b), (e), (g), (l), (p), ¶ 34 (a)–(c),(e), (j), (m), (q).

Count IV of the Tagert Complaint alleges negligence on the part of Kevin Hopfer for, *inter alia*, engaging in behavior that was dangerous to others, failing to promptly obtain medical attention for Ms. Tagert at the first sign of her adverse reaction, allowing and causing a prolonged delay in obtaining care for her, and failing to inform authorities of the nature of the substance with which she had been injected. Tagert Complaint at ¶ 37(a)–(c), (i), (q), (r).

Counts V, VI, VII, and VIII of the Tagert Complaint allege wrongful death against Timothy, Linda, David, and Kevin Hopfer and seek damages pursuant to the Pennsylvania Wrongful Death Act, 42 Pa.C.S.A. § 8301.

Allstate Insurance Company seeks a declaration pursuant to 28 U.S.C. §2201 that it does not have a duty to defend or indemnify the Hopfers in the civil action filed by Darlene Pffeiffer and Thomas Tagert in state court. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the citizenship of the parties is diverse and the amount in controversy exceeds $75,000.

## II. STANDARD

Under Federal Rule of Civil Procedure 12(c) a party may move for judgment on the pleadings. In order to prevail, the movant must show that "no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008) (citing Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 290-91 (3d Cir.1988)). In reviewing a 12(c) motion, the court must view the facts in the pleadings and the inferences drawn therefrom in the light most favorable to the non-moving party. Id.

## III. DISCUSSION

In determining whether the Hopfers' policy requires Allstate to defend or indemnify them in the Tagert action, the parties do not dispute that Pennsylvania law must be applied.[2] Under Pennsylvania law of insurance contract interpretation, the insurance policy should be read as a whole and construed according to its plain meaning. See Atlantic Mut. Ins. Co. v. Brotech Corp., 857 F.Supp. 423, 427 (E.D. Pa. 1994), aff'd, 60 F.3d 813 (3d Cir.1995). The primary goal in interpreting an insurance policy is "to ascertain the parties' intentions as manifested by the policy's terms." Kvaerner Metals

---

[2] When a federal court presides over a diversity case, the court must apply the choice-of-law rules of its forum state. Klaxon v. Stentor Elec. Mfg., 313 U.S. 487, 496 (1941). Pennsylvania choice of law rules mandate the application of the law of the state where the insurance policy is in effect, which in this case is in Pennsylvania. Pittsburgh Bridge & Iron Works v. Liberty Mut. Ins. Co., 444 F.2d 1286, 1288 n. 2 (3d Cir. 1971). Additionally, all parties cite to Pennsylvania law in their memoranda.

Div. of Kvaerner U.S. Inc. v. Commercial Union Ins. Co. 589 Pa. 317, 331, 908 A.2d 888, 897 (2006) (citing 401 Fourth St. v. Investors Ins. Co., 583 Pa. 445, 446, 879 A.2d 166, 170 (2005)). When the language of the policy is clear and unambiguous, the Court must give effect to that language. Id.

"A carrier's duties to defend and indemnify an insured in a suit brought by a third party depend upon a determination whether the third party's complaint triggers coverage." Mut. Benefit Ins. Co. v. Haver, 555 Pa. 534, 538, 725 A.2d 743, 745 (Pa. 1999) (citing Gen. Accident Ins. Co. of America v. Allen, 547 Pa. 693, 706, 692 A.2d 1089, 1095 (Pa. 1997)). In determining whether the insured's policy covers the action brought, courts look to the factual allegations contained in the underlying complaint. Id. (citing Scopel v. Donegal Mut. Ins. Co., 698 A.2d 602 (Pa. Super. Ct. 1997)). Coverage is not triggered by the official cause of action pled; courts must take care to look to the underlying facts and not to base a finding of coverage solely on the causes of action contained in a skillfully-worded complaint. Id.

"An insurer's duty to defend . . . arises whenever an underlying complaint may 'potentially' come within the insurance coverage." Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co., 193 F.3d 742, 746 (3d Cir. 1999). The duty to defend, therefore, may arise where the duty to indemnify does not later come to fruition; the former duty is based on the possibility that an underlying complaint will come within the policy's coverage. See Erie Ins. Exch. v. Claypoole, 449 Pa. Super. 142, 156, 673 A.2d 348, 355–56

(Pa. Super. 1996).  "If the complaint . . . avers facts that would support a recovery covered by the policy, then coverage is triggered and the insurer has a duty to defend until such time that the claim is confined to a recovery that the policy does not cover."  Allen, 692 A.2d at 1095.

To qualify for coverage in the first place, the insured's underlying complaint must contain allegations of an "occurrence" under the policy.  Even if a court finds that the underlying event constitutes an occurrence, the insurer may still establish that it is not required to defend because the underlying action falls under a policy exclusion precluding coverage for intentional acts.

### A. Coverage For An Occurrence

The "Family Liability Protection" section of the Hopfer's policy states that:

> Allstate will pay damages which an insured person becomes legally
> obligated to pay because of bodily injury or property damage arising
> from an occurrence to which this policy applies, and is covered by
> this part of the policy.

Def.'s Mot. For J. On The Pleadings, Ex. C.  An "insured person" is defined as "you [the holder(s) of the policy] and, if a resident of your household (a) any relative; and (b) any dependent person in your care."  Id.  Bodily injury is "physical harm to the body, including sickness or disease, and resulting death."  Id.  An "occurrence" is "an accident . . . resulting in bodily injury or property damage."  Id.

#### 1. Timothy Hopfer

Allstate claims the complaint filed against Timothy Hopfer does not trigger

coverage under Hopfers' policy because it does not allege acts that were accidental or that qualify as an "occurrence."  It also argues that Timothy's criminal conviction establishes his intent as to Ms. Tagert's death.  The Defendants' respond that although the Tagert complaint refers to some intentional acts, it primarily seeks recovery based on Timothy's negligent administration of CPR and negligent failure to promptly seek medical attention for Ms. Tagert —actions which are occurrences.  While the Tagert Complaint certainly alleges specific intentional acts on the part of Timothy Hopfer, it also alleges substantial negligence that brought about the eventual death of Ms. Tagert.  Because the complaint cannot be characterized as an action based solely on Timothy's intentional conduct and in fact contains allegations of negligence, some of Timothy's actions constitute occurrences.

The question of whether an incident constitutes an "occurrence" must be determined from the perspective of the insured.[3]  See Nationwide Mut. Fire Ins. Co. of Columbus v. Pipher, 140 F.3d 222, 226 (3d Cir.1998).  Intentional conduct does not qualify as an "occurrence," while conduct that is accidental or negligent does.  See Gene's Restaurant Inc. v. Nationwide Ins. Co. 519 Pa. 306, 309, 548 A.2d 246, 247 (Pa. 1988); Donegal Mut. Ins. Co. v. Baumhammers, 595 Pa. 147, 158, 938 A.2d 286, 292 (Pa. 2007).

Allstate points to the Pennsylvania Supreme Court's decision in Minnesota Fire and Cas. Co. v. Greenfield, 855 A.2d 854, 579 Pa. 333 (Pa. 2004) in support of its argument that Timothy's act was not accidental and therefore not an "occurrence."

---

[3]    Allstate does not contest that Timothy, as the son of David and Linda Hopfer and a resident in their home, is an "insured" under their homeowner's policy.

Greenfield concerned the availability of insurance coverage for Greenfield, who sold a woman heroin from his home and then allowed her to die from a heroin overdose while there. 855 A.2d at 856–57. As discussed below, the court overturned the lower court's finding that coverage for Greenfield was barred under his policy's intentional act exclusion. Allstate urges this Court to look to a footnote in the Greenfield opinion where the court reasoned that the lower court should have avoided the issue of the intentional act exclusion, and could instead have based its finding on whether Greenfield's act constituted an occurrence. It reasoned that, had the lower court done so, it could have reached a finding of non-coverage because Greenfield's act was neither accidental nor negligent but was rather a "voluntary . . . criminal transaction involving heroin." Id. at 864–65.

The Pennsylvania Supreme Court recognized in Gene's Restaurant Inc. that an intentional tort is not an "occurrence." 548 A.2d at 310. The court in Greenfield, albeit in dicta, recognized that the intentional transaction at issue there—the sale of heroin labeled "suicide" by the insured, who knew that the victim had previously experienced negative side effects from the drug—would likely have fallen under the rule in Gene's Restaurant.

When an insured person engages in intentional acts leading to the death or bodily injury of another, but allegations in an underlying complaint state a cause of action for negligence, the insured's acts or omissions may still qualify as an "occurrence." See Erie

-9-

Ins. Exch. v. Muff, 851 A.2d 919, 932–934 (Pa. Super. Ct. 2004); State Farm Fire and Cas. Co. v. Bellina, 264 F.Supp.2d. 198, 204 (E.D. Pa. 2003). In Muff, the insured, a babysitter, dropped a child in her care and then negligently failed to call for assistance. Id. at 929–930. The child later died, and Mrs. Muff was convicted of first-degree murder and aggravated assault. Id. at 930. She then was sued by the child's parents in a civil action, and the court found that because the complaint against her alleged negligence in failing to get medical attention for the child, Mrs. Muff's actions and failures, as set forth in the complaint, constituted an "occurrence" or "accident." Id. at 929. The court then found that, even though first-degree murder in Pennsylvania is, by definition, "an intentional killing," Mrs. Muff's conviction did not "conclusively establish her intent regarding the [negligent] acts alleged in the . . . complaint." Id. As a result, the insurance company had a duty to defend Mrs. Muff in the civil action alleging negligence.

The question this court must determine is whether, at this stage in the proceedings, Allstate has met its burden by showing that no factual question remains whether Timothy's actions were an "occurrence" or accident. Timothy is alleged to have injected Ms. Tagert with dilaudid three times; to have given her a third and final dose twice the size of the previous two; and to have encouraged her to receive numerous doses of the drug. However, a close examination of the Tagert complaint reveals that it also contains specific allegations of negligence, which include "failing to obtain medical attention for [Ms.] Tagert at the first signs of labored breathing, discoloration, vomiting, and loss of

consciousness," "allowing and causing a prolonged delay in obtaining medical attention for [Ms.] Tagert," "failing to report the adverse reaction in a timely manner," and "observing the [adverse reactions] . . . and negligently failing to appreciate the danger in which [Ms. Tagert] had been placed." Tagert Complaint at ¶ 31(c), (d), (e), (j).

In connection with these actions, Timothy Hopfer has pleaded guilty to Drug Delivery Resulting in Death. Allstate rightly argues that Timothy's injection of Ms. Tagert with Dilaudid was not accidental, and further, that by pleading guilty to drug delivery resulting in death, he has acknowledged that she died as a result of his acts. But this conviction does not foreclose the possibility that Ms. Tagert also died as the result of Timothy's negligence following the injection. Since the Tagert complaint adequately sets forth allegations supporting a claim of negligence, those acts qualify as occurrences and he is, barring the effect of any exclusion, entitled to coverage under the Hopfer insurance policy.

### 2. Robert, Linda, and Kevin Hopfer

Because the inquiry into whether an act is intentional or negligent is to be made from the point of view of the insured, analysis of the acts of Robert, Linda, and Kevin Hopfer will necessarily differ. In <u>Baumhammers</u>, 938 A.2d at 156–58, the Pennsylvania Supreme Court addressed whether an intentional act on the part of an insured child takes the entire underlying complaint out of the realm of an "occurrence." In <u>Baumhammers</u>, the Court recognized that although the insured son engaged in the intentional shooting

and killing of numerous people, the complaint against his parents sounded in negligence and thus fell within the definition of an "occurrence." Id. at 291. This is so even when all involved parties—the intentional actor and the negligent actors—are insured under the same policy. See id. at 289; Allstate Insurance Co. v. Key-Berthau, 2008 WL 5382924 at *6–7 (E.D. Pa. Dec. 19, 2008).

The allegations against David, Linda, and Kevin Hopfer sound in negligence. These remaining family members did not engage in any intentional acts that caused Ms. Tagert's death; rather, the Tagert complaint alleges that David and Linda Hopfer were negligent for, among other things, failing to obtain medical attention for Ms. Tagert in a timely manner and failing to properly supervise their sons and safeguard guests in their home. It alleges that Kevin Hopfer was negligent for engaging in dangerous activities and failing to promptly seek medical help for Ms. Tagert. From the standpoint of David, Linda, and Kevin Hopfer, the death of Ms. Tagert was an occurrence—an accident which resulted from their negligence both before and after Timothy injected Ms. Tagert with Dilaudid.

### B. Effect Of The Criminal Act Exclusion

Even though the negligent actions of Timothy, Linda, David, and Kevin Hopfer constitute an occurrence as defined in Allstate's policy, Allstate may avoid the duty to defend if Timothy's acts fall under the policy's criminal act exclusion and joint obligations clause. They state:

> Losses We Do Not Cover: We do not cover any bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any insured person . . . This exclusion applies regardless of whether or not such insured person is actually charged with, or convicted of a crime.

Def.'s Mot. For J. On The Pleadings, Ex. C.

Allstate argues (1) that it is not required to defend Timothy Hopfer pursuant to the criminal act exclusion and (2) that, as a result, it is not required to cover the remaining members of the Hopfer family because this section excludes coverage for all insureds for a loss resulting from the intentional criminal acts of "any insured." Defendants argue that, because the Tagert complaint alleges non-criminal and negligent behavior on the part of Timothy Hopfer, neither the criminal act exclusion nor the joint responsibility clause are applicable.

### 1. Whether Bodily Injury Was Intended by Timothy Hopfer

In the context of intentional act exclusions, the Pennsylvania Supreme Court has refused to recognize the doctrine of transferred intent—assumption of the intent to cause specific harm based on the commission of an act causing that harm—to cases other than child sexual abuse. See Greenfield, 855 A.2d at 863. The Third Circuit too has recognized the limited reach of transferred intent in the context of Pennsylvania insurance contract interpretation. Aetna Life and Cas. Co. v. Barthelemy, 33 F.3d 189, 193 (3d Cir. 1994). In Greenfield, the Pennsylvania Supreme Court acknowledged that Pennsylvania insurance law generally distinguishes between committing an intentional act that causes a

harmful result and acting with the intent to cause that harmful result. Id. ("In our state, the exclusionary clause applies only when the insured intends to cause a harm. Insurance coverage is not excluded because the insured's actions are intentional unless he also intended the resultant damage. The exclusion is inapplicable even if the insured should reasonably have foreseen the injury which his actions caused." (citing United Services Auto. Ass'n v. Elitzky, 517 A.2d 982, 987 (Pa. Super. Ct. 1986))). It found that although Greenfield sold the victim heroin, his actions did not relieve the insurance company of its duty to defend him under the policy's intentional act exclusion, which applied to "bodily injury which is expected or intended by the insured." Id. at 858.

The Court in Greenfield did reach a finding of non-coverage, but based it solely on the strong public policy interest in preventing insurance companies from having to defend heroin dealers. 855 A.2d at 865. It did not recognize a broader public policy interest in excluding coverage for all users or dealers of all drugs. More importantly, it specifically refused to extend the doctrine of inferred intent to drug sales. Id. at 863–64. Notably, the court acknowledged the dangerous nature of heroin but noted that transferred intent was only appropriate in child sexual abuse cases, where the unique and non-consensual nature of the act guarantees that harm will occur. Id. It observed that where heroin is involved, "[s]ometimes, users are fortunate and suffer no ill effects; other times, they lose consciousness; in the worst of all scenarios, they die." Id. at 863.

Because of the limited role of transferred intent in this context and in the absence

of an explicit ruling that public policy considerations preclude coverage for all incidents involving drugs, this Court cannot find that Ms. Tagert's bodily injury was "intended by" Timothy Hopfer.

### 2. Whether Ms. Tagert's Death Was Reasonably Expected to Result

The question remains whether coverage for Timothy is precluded pursuant to the second clause in the criminal act exclusion, which applies to bodily injury "which may reasonably be expected to result from the intentional or criminal acts or omissions of, any insured person."

Even when a third party makes a claim against an insured for negligence, non-coverage may be established based on a criminal act exclusion. See Bellina, 264 F. Supp. 2d at 198. In Bellina, the Court found the insured's failure to ascertain a trespasser's identity before shooting him constituted negligence and qualified as an occurrence, but it then based a finding of non-coverage on the insurance policy's criminal act exclusion. Id. at 204. It found that the exclusion applied because of the insured's conviction for voluntary manslaughter—a specific intent crime—in connection with the shooting. See id. As discussed above, the intentionality of underlying conduct is not to be assumed in Pennsylvania. Specific intent crimes such as assault or murder are intentional on their face and are therefore "reasonably expected" to bring about the bodily harm they cause. See Bellina, 264 F. Supp. 2d at 198; Allstate Insurance Co. v. Ervin, 2006 WL 2372237 at *4 (E.D. Pa. Aug. 14, 2006) (criminal act exclusion applied to assault by the insured);

Allstate Ins. Co. v. Key-Berthau, 2008 WL 5382924 at *8 (criminal act exclusion applied to insured's intentional act of shooting the victim nine times with a gun).

Timothy Hopfer pleaded guilty to a criminal charge—Drug Delivery Resulting in Death—in connection with his actions on the evening of December 7, 2005. This statute provides that: "A person commits murder of the third degree who administers, dispenses, delivers, gives, prescribes, sells or distributes any controlled substance . . . and another person dies as a result of using the substance." 18 Pa. C.S. § 2506. Conviction under § 2506 does not require specific intent for harm to result; however, it does require a showing of malice. See Commonwealth v. Ludwig, 583 Pa. 6, 19–20, 874 A.2d 623, 630 (Pa. 2005); Commonwealth v. Costa, 861 A.2d 358, 363 (Pa. Super. Ct. 2004). In discussing the showing of malice required for a conviction under § 2506, the Pennsylvania Supreme Court looked to the traditional common law requirements for conviction of a malice crime, explaining that:

> "Malice has been characterized as exhibiting an "extreme indifference to human life," and "may be found to exist not only in an intentional killing, but also in an unintentional homicide where the perpetrator 'consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily harm.'" Indeed, our Court has stated that an inference of malice is not supported even by evidence which demonstrates that a defendant acted out of anger and rage; in such a case, voluntary manslaughter, not murder, is established. Thus, the mental state of malice aforethought is significantly more than mere carelessness or neglect, or the disregard of a chance or possibility of death, and it is this special frame of mind that is required to obtain a conviction under Section 2506."

Ludwig, 874 A.2d at 632 (internal citations omitted).

The Hopfer policy excludes coverage for injury "which may reasonably be expected to result from the intentional or criminal acts or omissions of, any insured person." Timothy Hopfer's conviction for Drug Delivery Resulting in Death establishes not only that Timothy could reasonably expect injury to result from his criminal act of giving Dilaudid to Ms. Tagert, but also that by doing so, he disregarded an extremely high risk that injury would result. Therefore, Timothy Hopfer is excluded from coverage pursuant to the policy's criminal act exclusion.

The Hopfer policy's criminal act exclusion applies to "bodily injury or property damage. . . which may reasonably be expected to result from the. . . criminal acts . . . of any insured person." An insurer does not owe a duty to defend an "innocent" insured when the policy excludes coverage for bodily injuries arising from the intentional or criminal acts of "any insured." Baumhammers, 893 A.2d at 818 (immaterial that parents of child who committed criminal acts did not engage in criminal behavior because the policy exclusion applied to the criminal behavior of "any insured"); see also Allen, 708 A.2d at 832 (noting distinction between exclusion for "any insured" and "the insured"). Because the Hopfer policy's exclusion pertains to the criminal acts of "any insured," and Timothy Hopfer is excluded from coverage due to criminal acts that could reasonably be expected to result in the death of Ms. Tagert, the remaining Hopfers, too, are excluded from coverage.

**IV. CONCLUSION**

I will grant Allstate's motion for judgment on the pleadings. I find that Allstate has no duty to defend or indemnify the Hopfers in the underlying civil action due to the operation of the policy's criminal act exclusion. An appropriate order follows.